# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JAMES DARREN GEORGE,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-11-S-3518-M** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, James Darren George, commenced this action on September 29, 2011, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ") denying his claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ: (1) improperly considered claimant's receipt of unemployment benefits; (2) improperly evaluated claimant's subjective complaints of pain; (3) improperly considered the opinion of claimant's treating physician; and (4) failed to pose a question to the vocational expert that included all of claimant's limitations. Upon review of the record, the court concludes those contentions are not correct.

**A.     Unemployment Compensation**

All of claimant's arguments ultimately relate back to his first argument, about unemployment benefits, so that is where the discussion should begin. During the March 4, 2010 administrative hearing, claimant acknowledged that he was currently receiving unemployment compensation benefits, and had been receiving them since at least since the beginning of 2009. He also acknowledged that, when he applied for those unemployment benefits, he had to certify to the State that he was able to work and was looking for work.[1] Claimant's attorney represented that claimant sought unemployment benefits because he needed the financial resources to pay his

---

[1] Tr. 62.

2

mortgage.[2]  At the end of the hearing, the ALJ stated that he would not need to take any vocational expert testimony, but

> in light of the unemployment earnings' [sic] situation, I'm going to just do a little research to make sure there's no discrepancy there.  I know that — I know for a fact that there's case law from the Supreme Court that says that [an] ADA claim does not conflict with a Social Security claim and I think there's some guidance of law on how unemployment correlates with Social Security and I just want to do a little research to clear that up before I — research and then write the decision.
>
> If I get by that hurdle, you'll have a favorable decision because I'm confident based upon the level of pain and the quantities — mere quantities of narcotic medications you're taking preclude [you] from being able to work.[3]

Claimant's attorney expressed his hope that his client would be "okay on [the unemployment compensation] issue,"[4] and the ALJ responded:

> I think you may be, but there is, you know, there is an issue and I know that I've seen with respect to ADA claims because ADA, Social Security doesn't take into account reasonable accommodations that an ADA account takes up, but I think that the case law may say that on the unemployment side, because unemployment does, in fact, cover a situation where you may be doing part-time work [INAUDIBLE] full-time work that that may be a distinguishing factor that allows him to not be [INAUDIBLE] as well.  So it'll probably come out all right.[5]

By the time he rendered his administrative decision on March 19, 2010,

---

[2] Tr. 68.

[3] *Id.* (bracketed alterations supplied).

[4] Tr. 69 (bracketed alteration supplied).

[5] *Id.* (bracketed alterations in original).

3

however, the ALJ had changed course. He stated:

> Finally, the claimant testified that he received, and continues to receive unemployment compensation. He noted when he applied for unemployment compensation he certified to the State that he was looking for work, but indicated in actuality he was not seeking employment. Therefore, the undersigned notes that the claimant had been receiving unemployment compensation through his alleged disability period. As a condition of receiving unemployment payments, the claimant must certify that he is ready, willing, and able to work, as well, [sic] as actively looking for employment. Pursuant to Social Security guidelines, the receipt of unemployment benefits [is] just one factor to be considered by the adjudicator.
>
> This policy flows from the Social Security policy and U.S. Supreme Court precedent in Cleveland v. Policy Management Systems, Corp., 526 U.S. 795 (1999), see also SSR 00-1C. [sic] In the Court case the Supreme Court held that no adverse presumption should arose [sic] in an Americans with Disabilities Act (ADA) case, and disability due to the fact that circumstances could exist where the two statutes are not inconsistent. [sic] The Court further held that such an individual must explain the apparent discrepancy between the claimant being unable to work and the claimant being able to work with reasonable accommodation.
>
> In the case at hand, the claimant through counsel explained that the family financial situation was so dire that he had to seek unemployment. This explanation is completely plausible and understandable; however, it in no way addressed the Court's direction to explain the difference in claims. The claimant had claimed via application and weekly certification to the State that he was and is actively seeking work; and is ready, willing, and able to go back to work. The claimant was at the same time asserting to the Social Security Agency (SSA) that he is unable to engage in substantial gainful activity (SGA) due to physical and/or mental impairments. These are inconsistent statements and the claimant's explanation does not provide a reasonable indication of how the two assertions could be consistent.

4

> Therefore, the claimant has no credibility with the Court. This issue is not dispositive but rather one factor. However, the undersigned invites the claimant to pursue an appeal to address the issue of unemployment compensation claims['] effect on SSDI claims as this appears to be an issue of first impression, capable of reproduction, which needs to be adjudicated by higher Court authority.[6]

The ALJ's credibility determination affected most other aspects of his decision. For example, he found that while claimant's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they are inconsistent with a residual functional capacity to perform the full range of sedentary work. The ALJ found that claimant's assertion of inability to work after 2009 was not credible, in part because he had suffered the same impairments since at least 2002, but nonetheless continued to perform heavy work until 2009. The ALJ also discredited claimant's assertion that his pain medication had sedating side effects, noting that claimant continued to work at the heavy exertional level for three years after starting that medication.[7]

Claimant asserts that the ALJ should have given him a further opportunity to explain the inconsistencies in his representations to the unemployment compensation board and to the Commissioner. Claimant relies primarily upon the *Cleveland* case

---

[6] Tr. 16-17 (bracketed alterations supplied).
[7] Tr. 16.

cited by the ALJ. There, the Supreme Court held that a plaintiff receiving Social Security disability benefits — which she obtained as a result of establishing that she could perform neither her previous job duties nor any other work existing in significant numbers in the national economy — was not *necessarily* barred from also pursuing an action for disability discrimination under the Americans With Disabilities Act of 1990 ("ADA"), in which she would have to establish that she could perform "the essential functions of her job" with "reasonable accommodation." *Cleveland,* 526 U.S. at 797. The Court emphasized, however, that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim." *Id.* at 806. The plaintiff can proceed on both theories, but only if she can "proffer a sufficient explanation." *Id.* The plaintiff's explanation "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement [that the plaintiff was unable to work for Social Security disability purposes], the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 807 (bracketed alteration supplied). In *Cleveland*, the plaintiff explained the inconsistency between her statements by asserting that her representations to the Social Security Administration about her inability to work "'were made in a forum which does not consider the effect that reasonable workplace

accommodations would have on the ability to work,'" and were accurate for the time period during which they were made. *Id.* The Supreme Court held that the plaintiff should have been allowed to present those arguments to the trial court, and remanded for that purpose. *Id.*

Claimant also relies upon an August 9, 2010 memorandum from Frank Cristaudo, the Chief Administrative Law Judge for the Social Security Administration, to all other Administrative Law Judges. In that memorandum, Judge Cristaudo clarified the effect of the *Cleveland* decision on the Social Security Administration's policy regarding a claimant's receipt of unemployment benefits:

> Receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits. The receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled. *See* CFR 404.1512(b) and 416.912(b).
>
> In considering claims of individuals who have applied for unemployment benefits, Administrative Law Judges (ALJs) should be mindful of the principles discussed in Social Security Ruling 00-1c, which incorporates *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999). In that case, the Supreme Court held, in a unanimous decision, that a claim for Social Security disability benefits is often consistent with a claim for relief under the Americans with Disabilities Act (ADA) even though there must be an ability to work in order to obtain relief under the ADA. The Court noted that, under the presumptions embodied in our five-step sequential evaluation process, a person can qualify for Social Security disability benefits even though he or she remains capable of performing some work. Similar logic applies to applications for unemployment benefits.

> In addition, it is often uncertain whether we will find a person who applies for unemployment benefits ultimately to be disabled under our rules, and our decisionmaking process can be quite lengthy. Therefore, it is SSA's position that individuals need not choose between applying for unemployment insurance and Social Security disability benefits.
>
> However, application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence. Often, the underlying circumstances will be of greater relevance than the mere application for and receipt of the benefits. For instance, the fact that a person has, during his or her alleged period of disability, sought employment at jobs with physical demands in excess of the person's alleged limitations would be a relevant factor that an ALJ should take into account, particularly if the ALJ inquired about an explanation for this apparent inconsistency.
>
> Accordingly, ALJs should look at the totality of the circumstances in determining the significance of the application for unemployment benefits and related efforts to obtain employment.[8]

Judge Cristaudo's memorandum is consistent with the decisions of other Circuit Courts of Appeal, which have held that a claimant's application for and receipt of unemployment compensation benefits is one factor the ALJ may consider in evaluating a claimant's credibility. *See, e.g., Carmickle v. Commissioner, Social Security Administration,* 533 F.3d 1155, 1161-62 (9th Cir. 2008) (acknowledging that "receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime"); *Schmidt v. Barnhart,* 395 F.3d 737, 745 (7th Cir. 2005) ("[W]e are

---

[8] Doc. no. 8 (claimant's brief), at Exhibit 1 (August 9, 2010 Memorandum).

not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely *no* role in assessing his subjective complaints of disability.") (emphasis in original); *Workman v. Commissioner of Social Security,* 105 F. App'x 794, 801-02 (6th Cir. 2004) ("Applications for unemployment and disability benefits are inherently inconsistent," and that inconsistency can be considered in evaluating the claimant's credibility.).

The ALJ in this properly applied these principles in evaluating claimant's credibility. It is clear that the ALJ did not rely solely on claimant's unemployment compensation application in evaluating claimant's credibility; instead, the application was only one factor in the ALJ's analysis.[9] While this court is not convinced, as the ALJ suggested, that a claimant is obligated to explain the inconsistency in the same manner that the *Cleveland* decision requires an ADA plaintiff to explain inconsistencies, the court also sees no reason why the ALJ could not consider any explanation, or lack thereof, in making a credibility determination.

This court understands that claimant may have had valid, even compelling, personal reasons for applying for unemployment compensation and Social Security

---

[9] *See* Tr. 17 ("Pursuant to Social Security guidelines, the receipt of unemployment benefits [is] just one factor to be considered by the adjudicator."); *id.* ("This issue is not dispositive but rather one factor.").

disability benefits at the same time. But the ALJ nonetheless was entitled to consider the inconsistencies in claimant's representations to various agencies in evaluating claimant's credibility. The court also understands that claimant likely was surprised and confused after receiving the ALJ's administrative decision, given that the ALJ indicated during the administrative hearing that he was likely to rule in claimant's favor. Unfortunately, however, there is no rule preventing an ALJ from changing his mind between the hearing and the time of his decision. In summary, the ALJ's consideration of claimant's application for and receipt of unemployment compensation benefits was in accordance with controlling law and supported by substantial evidence.

**B.     Subjective Complaints of Pain**

Claimant next asserts that the ALJ improperly considered his subjective complaints of pain. To demonstrate that pain renders him disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony on pain, "he must articulate explicit

and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). Furthermore, once an ALJ determines whether the pain standard has been met, he can move forward to consider claimant's complaints are credible in light of the substantial evidence of record. *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis supplied).

As noted above, the ALJ found that claimant's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, but that claimant's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with a residual functional capacity to perform a full range of sedentary work.[10] It has already been determined that the ALJ properly considered claimant's application for and receipt of unemployment compensation benefits in deciding not to fully credit claimant's subjective complaints. The ALJ also found that claimant's allegations were inconsistent with his history of working at the heavy exertional level for several years

---

[10] Tr. 16.

after his physical symptoms first began, and after he started his current, allegedly sedating, medication regime. He further found that claimant's alleged level of impairment was inconsistent with the report of consultative examiner Dr. Jariwala, who assessed only mild impairments. These are all valid reasons for the ALJ's decision not to fully credit claimant's allegations of pain and other subjective symptoms, and the ALJ's conclusions in this regard are supported by substantial evidence.

## C.   Treating Physician

Next, claimant argues that claimant improperly considered the opinion of his treating physician, Dr. Michael G. Gibson. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. §

416.927(e). Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Gibson submitted two letters in support of claimant's application for disability benefits. On May 12, 2009, he stated:

> Mr. George is currently in my professional care and treatment for a disabling condition of his lumbar spine. As a result of his physical condition, it is my opinion based on my education, training, experience and examination of Mr. George that he is in fact permanently and totally disabled to a reasonable degree of medical certainty. His condition is degenerative in nature and is such that it will continue to worsen despite time and treatment. Also, Mr. George is currently taking methadone, a narcotic medication to control his pain. These medications are sedating for him and would decrease his ability to function in a workplace setting.[11]

---

[11] Tr. 867.

Dr. Gibson submitted an almost identical letter on March 1, 2010.[12]  The only difference between the two letters is that, on March 1, 2010, Dr. Gibson specified that claimant had been prescribed 100 mg of methadone each day.

The ALJ afforded "official notice but not controlling weight" to Dr. Gibson's opinion.  As reasons for that decision, the ALJ stated that the ultimate decision of whether claimant was disabled was reserved for the Commissioner, and that the ALJ's assessments about the sedating effects of claimant's medications were not credible, for the same reasons discussed above, with regard to unemployment compensation benefits.  Furthermore, the ALJ concluded that the opinion of Dr. Hasmukh Jariwala, the consultative examiner, was entitled to more weight than Dr. Gibson's opinion.  Dr. Jariwala examined claimant on April 21, 2009, and reported that claimant had mild impairment of his lumbar spine and right shoulder, minimal impairment of his left shoulder, minimal to mild impairment of the bilateral knees, and no impairment of any other joints.  Claimant's gait was normal, his reflexes were intact, and he had no muscle spasms, but he did have some difficulty walking on his heels and toes, as well as with squatting and rising.  He had unremarkable neurological findings, and his grip strength was fully intact.  Dr. Jariwala did acknowledge claimant's complaint of drowsiness from his medications, but he made no independent medical findings

---

[12] Tr. 869.

about drowsiness.

The court finds that the ALJ adequately articulated his reasons for failing to fully credit Dr. Gibson's opinion of total disability, and the ALJ's findings were supported by substantial evidence. Given the propriety, as discussed above, of the ALJ's decision not to fully credit claimant's subjective testimony, including his complaints of medication side effects, the ALJ was entitled to give more weight to Dr. Jariwala's opinion than to Dr. Gibson's, if he found Dr. Jariwala's opinion to be more consistent with the record evidence as a whole.

Furthermore, the ALJ was not required, as claimant asserts, to recontact Dr. Gibson for additional explanation of his assessment of total disability. According to claimant, an ALJ is required to recontact a treating physician *anytime* the physician makes a finding on an ultimate issue, like disability, that is reserved to the Commissioner. Claimant's argument blatantly misconstrues applicable regulatory authority. Claimant cites to Social Security Ruling 96-5p, which states that "opinions from any medical source on issues reserved to the Commissioner must never be ignored." SSR 96-5p. That is a true statement, but it has no applicability here, because the ALJ did not *ingore* Dr. Gibson's opinion. Instead, he specifically discussed that opinion, but ultimately decided to discredit it. SSR 96-5p also states that "[f]or treating sources, the rules also require that we make every reasonable effort

15

to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." *Id.* Here, the ALJ did not conclude that the basis for Dr. Gibson's opinion was *unclear*; instead, he disagreed with the opinion. There was no reason for the ALJ to recontact Dr. Gibson, and claimant's argument in this regard is without merit.

**D.     Hypothetical Question to the Vocational Expert**

Finally, claimant argues that the ALJ failed to pose a hypothetical question to the vocational expert that encompassed all of his diagnosed limitations. Indeed, the ALJ did not pose *any* questions to the vocational expert, because he concluded during the administrative hearing that vocational expert testimony would not be necessary.[13] Claimant speculates that the ALJ's reason for failing to obtain vocational expert testimony was that, at the conclusion of the hearing, the ALJ expected to find claimant disabled. Even if that was the reason, the court concludes that the ALJ did not err. Claimant asserts that, after he decided to "rule against" claimant on the unemployment compensation benefits issue, the ALJ should have held a supplemental hearing in order to obtain vocational expert testimony. It is true that the ALJ has a basic duty to develop "a full and fair record," *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981), but claimant has offered no convincing argument that the ALJ's

---

[13] *See* Tr. 68.

duty in this case required him to conduct a separate hearing and obtain vocational expert testimony. Claimant also has presented no convincing evidence that he was incapable of performing anything less than a full range of sedentary work, or that he had additional non-exertional limitations.[14] Consequently, the ALJ was not required to consult a vocational expert in order to determine claimant's ability to work. *See Phillips,* 357 F.3d at 1242 (holding that an ALJ must contact a vocational expert *if* the claimant is unable to perform a full range work at a particular exertional level, or if he has additional non-exertional impairments).

**E.     Conclusion and Order**

In summary, the court finds that the decision of the Commissioner was in accordance with applicable law and supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 20th day of July, 2012.

_____
United States District Judge

---

[14] As discussed repeatedly above, the ALJ correctly found that claimant's subjective complaints, including his complaints of medication side effects, were less than fully credible.